Matter of Angel S. v Nelinda M. (2006 NY Slip Op 50896(U))

[*1]

Matter of Angel S. v Nelinda M.

2006 NY Slip Op 50896(U) [12 Misc 3d 1154(A)]

Decided on May 17, 2006

Family Court, Kings County

Hamill, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 17, 2006

Family Court, Kings County
In the Matter of ANGEL S. SHEILA B. ANASTATIA P. JUSTIN P. NATALIE P. ROGELINA M. NOEL M. Children Under the Age of Eighteen Years Alleged to be Abused and/or Neglected by
against
NELINDA M. HIPOLITO R., Respondents.
 NA 2040-5/05

Appearances:
Joanna Galia, Esq. for petitioner
Family Court Legal Services, Administration for Children's Services
330 Jay Street, 12th Floor
Brooklyn, New York 11201
Dawn Post, Esq. as law guardian
Juvenile Rights Division of the Legal Aid Society
111 Livingston Street, 8th Floor
Brooklyn, New York 11201
Michael S. Somma, Jr., for respondent Nelida M.
32 Court Street, Suite 507
Brooklyn, New York 11201

Bryanne A. Hamill, J.
Procedural History
On April 12, 2005, the Administration for Children's Services ( hereinafter "ACS") filed an abuse petition, pursuant to Family Court Act §§1012 (e)(i)& (ii) against the respondent mother, Nelinda M. (hereinafter "respondent mother"), and the person legally responsible for the subject children, Hipolito R. (hereinafter "respondent R."or "R.") with regard to the subject children, Anastasia P., Angel S., Justin P., Natalie P., Rogelina M., and Sheila B..
ACS alleges in their petition, inter alia, that on April 9, 2005, fifteen-month-old Angel S. and eleven-year-old Sheila B. left Brooklyn with respondent R. to go to his home in New Jersey for the weekend. Later that same day, Angel S. was brought to Rahway Hospital and was pronounced dead on arrival. The medical examiner ruled the death a homicide and the actual cause of death being a blunt force trauma to the liver resulting in the rupturing of the liver. ACS further alleges that one week prior to Angel's death, he was in the care and custody of respondent R. from April 1, 2005 to April 3, 2005, and that Angel was returned to the respondent mother with two black eyes and swelling to his forehead.
ACS further alleges that despite knowing of these injuries and even documenting these injuries with a camera on her cell phone, the respondent mother failed to seek any medical attention, and that according to the respondent mother she took photographs of the injury so that she would be able to show that the injuries did not occur to the child while under her care. ACS further alleges that the respondent mother failed to provide Angel S. with adequate guardianship that despite the child being returned to her with black eyes and a swelling to his forehead the respondent mother voluntarily let respondent R. take the child the following weekend to his home. Additionally, according to the subject child Sheila, Angel would frequently cry when he saw respondent R. enter the room.
ACS effectuated an emergency removal of the surviving children upon the death of Angel. At the request of the respondent mother for the return of her children, a hearing was held on April 18, 2005, where this Court heard testimony from the ACS caseworker and the law guardian's social worker. Pursuant to Family Court Act § 1028, this Court denied the respondent mother's request to return the surviving children, finding, inter alia, them to be at imminent risk, if returned.
On September 17, 2005, this mother gave birth to Noel, after which ACS filed a derivative abuse petition on October 6, 2005, whereupon Noel was remanded to ACS. Upon a 1028 hearing held on January 9, 2006, this Court determined that the temporary removal of the infant Noel was necessary to avoid imminent risk to this child's life and health.
Thereafter, ACS filed this instant motion for summary judgment, alleging that there are no genuine triable issues of fact, and requesting an order finding that the subject children are abused and/or neglect. In support of ACS' motion, a transcript of a portion of the1028 hearing, including the mother's testimony, and the medical examiner's autopsy report of Angel were annexed. The respondent mother's counsel submitted an affirmation in opposition, but the respondent mother has failed to submit an affidavit.
Analysis
[*2] The Court of Appeals established the appropriateness of summary judgments in neglect and abuse proceedings in Suffolk County DSS v. James M., 83 NY2d 178 (1994). Summary judgment is useful in expediting the just resolution of a legal dispute and in conserving the overburdened judicial resources. Id. When there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the Trial Calendar and thus deny to other litigants the right to have their claims properly adjudicated. Andre v. Pomeroy, 35 NY2d 361 (1974). Pursuant to NY CPLR R. 3212 (b), "a motion for summary judgment shall be supported by an affidavit, by a copy of the pleadings and by other admissible proof, such as a depositions and written admissions..."
Where the moving party has demonstrated that it is entitled to summary judgment, the party opposing the motion must demonstrate by admissible evidence the existence of a triable issue of fact or tender an acceptable excuse for failing to do so, and the submission of a hearsay affirmation by counsel alone does not satisfy this requirement." Zuckerman v. City of New York, 49 NY2d 557 (Court of Appeals 1980). Unsubstantiated allegations are insufficient to raise a triable issue of fact and will not defeat entry of summary judgment. Matter of Jimmy A., 218 AD2d 734 (2nd Dept. 1995).
In the instant case, based upon the mother's admissions and the medical examiner's report, the following facts are not in dispute. Respondent R., who is not the biological father of Angel or the other children, was present at the respondent mother's home almost every day, often left alone with the children while the respondent mother ran errands. The respondent mother sent fifteen-month-old Angel alone to stay with respondent R. at his home in New Jersey the weekend of April 1, 2005. Respondent R. did not have a crib for Angel in his home. After this visit, respondent R. returned Angel home on April 3, 2005, with two new bruises and two new marks on his face. His mother admitted that Angel returned with a bruise on his forehead, a bruise under his left eye, and with two lines on the right side of his face, all of which he had not had prior to his weekend visit with R. Upon his return, Angel's mother was very upset with respondent R. and told him to leave her home, accusing him of improperly caring for Angel.
Notwithstanding her observations of four new facial marks and accusing R. of improperly caring for Angel the weekend before, this mother again sent Angel with R. the following weekend, on April 9, 2005. This time, she sent her eleven-year-old daughter Sheila to stay with R. and Angel, despite knowing that Angel was harmed only days before in R. 's care. This mother admitted that it was poor judgment to allow respondent R. to take Angel the day Angel died.
On April 9, 2005, Angel was brought to Rahway Hospital, in New Jersey, where he was pronounced dead on arrival. The medical examiner's report documents that Angel died from blunt force trauma to the abdomen, which lacerated his liver, and that he had contusions of his pancreas, and multiple contusions and abrasions on his head, torso and extremities. Some of the facial marks are consistent with the mother's observations when Angel returned home the weekend before his death. Significantly, despite her brother and sister accompanying her to New Jersey when she learned of Angel's death, this mother chose to spend the night with R. in his home, with eleven-year-old Sheila who was present at the time of Angel's death, knowing R. was a suspect for the homicide of her son that day.
During the 1028 hearings held, the law guardian's social worker testified to statements [*3]that some of the children made regarding respondent R.'s actions toward them and the mother's knowledge thereof. Although not acknowledged by the mother, these children's statements may be considered by this Court because the testimony was under oath, subject to cross examination by all parties, and the children's statements are admissible, pursuant to FCA Act § 1046 (vi), which states in part " that previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence . . . "
The law guardian's social worker testified that Sheila said that respondent R. hit them with a thick exercise belt that he wore around his waist to work out at the gym; Rogelina said that respondent R. did bad things when she was left with him, and that he hit her, Natalie and Maximus.
The issue for this Court to determine is whether, as a matter of law, based upon the nonhearsay portions of the 1028 testimony and medical examiner's report, the subject children were abused and /or neglected, pursuant to the Family Court Act, as a result the respondent mother's actions and poor judgment, where she allowed fifteen-month-old Angel with eleven-year-old Sheila to return to the home of R. in New Jersey, after Angel was harmed in his care only days before. Notably, the respondent mother did not file an affidavit and does not dispute the cause and manner of Angel's death.
Family Court Act §1012(e)(ii) defines an abused child as a child "whose parent or other person legally responsible for his care creates or allows to be created a substantial risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ."
Family Court Act § 1012(f)(i)(B) defines a neglected child as a child "whose physical, mental or emotional condition is in imminent danger of becoming impaired as a result of the failure of her parent or other person legally responsible for her care to exercise a minimum degree of care in providing the child with proper supervision or guardianship; by unreasonable inflicting or allowing to be inflicted harm, or a substantial risk thereof, upon the child, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court."
In the instant case, this mother admitted at the hearing that she was upset when R. returned Angel to her home on April 3, 2005 with multiple facial marks, including two lines and two bruises, and accused him of not watching her child properly. She testified that she told him to return the child when she was made aware that he was hurt, and yet took no action to pick-up Angel when R. failed to immediately return the child. She conceded that, despite the multiple facial marks the weekend before, she returned Angel to New Jersey.
Respondent mother's argument that there are triable issues of fact as to where the bruises were on the child is not sufficient to raise a genuine and material triable issue of fact and will not defeat entry of summary judgment. Matter of Jimmy A., 218 AD2d 734 (2nd Dept. 1995). The respondent mother's testimony alone is sufficient proof that she allowed to be created a substantial risk of physical injury which would be likely to cause death or serious physical injury to Angel by allowing him to return with the person for the weekend where he was injured only days before. Based upon the her testimony alone, she observed multiple bruises and marks on her toddler's face the weekend before he was killed after respondent R. cared for him, and was [*4]quite upset, asking him how could he let this happen when he knew that she already had a case with ACS. She further admitted that Angel's father and respondent R., who had been good friends, had a falling out months before Angel's death, were not speaking to each other, and that Angel's father did not trust R.
Angel was only fifteen months old, obviously could not care for himself, could not defend himself, and was totally dependent on the adult to whom this mother entrusted his care to. By allowing respondent R. to care for the child only days after he was returned harmed, whether it was intentional or by respondent R.'s failure to properly supervise him, the respondent mother allowed to be created a substantial risk of serious physical injury to Angel.
The existing case law supports this conclusion. The First Department in Rashard D., 15 AD3d 209 (1st Dept. 2005), held that a mother created a substantial risk of physical injury that could have resulted in her 12-year-old child's death when she instructed him to rob a bank. "Where the fact that the child was not shot or that the situation unfolded in such a way as to the reduce the likelihood of gunfire does not lessen the severity of the danger to the child." " The respondent intentionally put her child in such a situation." Id. at 211.
This Court in the Matter of Shanaye C., 2 Misc 3d 887 (NY Fam. Ct. 2003) found that when the father fatally strangled the children's mother and grandmother with the children present in the home, the children were abused children, pursuant to FCA §1012(e)(ii). This Court reasoned that under the totality of the circumstances the respondent father created a substantial risk of physical injury to the subject children, by creating and placing the children in a zone of clear and present physical danger, which would be likely to cause death or protracted impairment of physical or emotional health. Additionally, the Court of Appeals held that a child who died from drowning after being left unattended in a bathtub could be the subject of an abuse petition under Family Court Act. Matter of Alijah C., 1 NY3d 375 (2004)
In this case, under the totality of these facts and circumstances, the respondent mother allowed to be created this zone of danger when she knowingly allowed her fifteen-month-old child to leave her home in respondent R.'s care knowing he was harmed only days before. Accordingly, this Court finds that the respondent mother abused the child Angel S., pursuant to FCA §1012(e)(ii).
With respect to Sheila, the respondent mother knowingly allowed Sheila to go with respondent R. to his home, knowing that only days before her younger child was harmed under respondent R.'s care. Further, the respondent mother testified that the night after Angel died that she and Sheila stayed with respondent R. in his home. She also admitted that she was aware of what impact that may have had on Sheila's emotional health, to stay in the home with the person the police suspected had just killed her brother. In doing so, this mother allowed to be created a substantial risk of serious physical and/ or emotional harm to Sheila by placing her in this situation, and then causing her to spend the night with respondent R., knowing that he was suspected of murdering her son. "A child need not sustain physical injury to support a finding of abuse, as long as the evidence demonstrates that the parent sufficiently endangered the child by creating a substantial risk of serious injury." Matter of Angelique H, 215 AD2d. 318 (1st dept. 1995). "Under section of Family Court Act defining an "abused child," it is sufficient for finding of abuse that there be protracted impairment of emotional health or substantial risk thereof; it is actual or potential impact on child as supposed to per se seriousness of the injury, that forms [*5]predicate for abuse." Matter of Shane T. 115 Misc 2d. 161, 163 (Fam Ct. 1982). Accordingly, the Court finds, under the totality of these facts and circumstances, that Sheila is an abused and neglected child, pursuant to FCA §1012 (e)(ii) and 1012(f)(i)(B).
With respect to derivative findings of abuse or neglect of the remaining children, FCA §1046(a)(i) states that "proof of abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of the respondents or any other child the respondents are legally responsible for." The Second Department in Matter of Baby Boy W., 283 AD2d 584 (2d Dept. 2001), held that in a derivative neglect proceeding the determinative factor is whether, taking into account the nature of the conduct and another pertinent consideration, the conduct which formed the basis for a finding of abuse or neglect as to one child is so proximate in time to the derivative proceeding that it can be reasonably be concluded that the condition still exists. "Even in the absence of direct evidence of actual abuse of neglect of a second child, a derivative finding of neglect should be made where the evidence as to the directly abused or neglected child demonstrates such an impaired level of parental judgment as to create a substantial risk of harm to any child in their care, thereby making such a child neglected under Family Court §1012(f)(i)(B)." Matter of Ramsay M. 17 AD3d 678, 679 (2d Dept. 2005)
Based upon the nature of the respondent mother's acts in allowing to be created a substantial risk of serious physical and emotional harm to Angel and Sheila, the fact that all of her other children were under the age of ten at the time of Angel's death, and its proximity in time to the derivative proceedings, this Court concludes, under the totality of these facts and circumstances, that the respondent mother demonstrates serious fundamental flaws in her understanding of the duties of parenthood that places any child in her care at risk of being neglected. Thus, this Court further finds that as a result of the mother's knowledge, actions, and poor parental judgment that resulted in the death of fifteen-month-old Angel, that Anastasia P., Justin P., Natalie P., Rogelina M. and Noel M. are derivatively neglected children.
Accordingly, ACS' motion for summary judgment is granted to the extent that this Court enters findings of abuse, pursuant to FCA §1012(e)(ii), as to Angel S. Jr. and Sheila B.; findings of neglect, pursuant to FCA §1012 (f)(i)(B), as to Sheila B.; and derivative findings of neglect, pursuant to FCA §1012(f)(i)(B), as to Anastasia P., Justin P., Natalie P., Rogelina M. and Noel M..
The foregoing constitutes the decision and Order of this Court.
Dated: Brooklyn, New York
 May 17, 2006
____________________________
HON. BRYANNE A. HAMILL
J.F.C